IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J.B. HUNT TRANSPORT, INC.                                    PLAINTIFF

          v.              Civil No. 07-5235

FREIGHTLINER CORPORATION;
FREIGHTLINER LLC; BILL HINSON;
and DETROIT DIESEL CORPORATION                              DEFENDANTS

ALLIANZ INSURANCE COMPANY                                   INTERVENOR

### O R D E R

On February 26, 2008, the Court took up for hearing the **Motion And Brief In Support Of Allianz Insurance Company's Motion To Vacate Order Granting Temporary Restraining Order** (document #7) and the **Motion To Lift The Temporary Restraining Order, Preliminary And Permanent Injunctive Relief** filed by defendants in the Circuit Court of Washington County, Arkansas, and from said motions and the responses thereto, the evidence produced at the hearing, and the arguments of counsel, the Court finds and orders as follows:

1.   This case was originally filed in the Circuit Court of Washington County, Arkansas, as a suit for declaratory judgment (the "Declaratory Judgment Action") under the Arkansas Declaratory Judgment Act, **A.C.A. §16-111-101 et seq.**  Plaintiff, J.B. Hunt Transport, Inc. ("J.B. Hunt"), sought a declaration of its rights pursuant to a Confidential Agreement it entered into on July 12, 2005, along with defendants Freightliner Corporation and

Freightliner LLC ("Freightliner") and Detroit Diesel Corporation ("Detroit Diesel").   The declaration J.B. Hunt sought was described in its Complaint as "the rights, duties and liabilities of the parties to the Confidential Agreement."

2.   J.B. Hunt's Complaint also named as a defendant one Bill Hinson ("Hinson"), said to be an Arkansas resident.  Before taking up the merits of the issue presented by the motions now under consideration, the Court questioned J.B. Hunt with regard to Hinson, inasmuch as J.B. Hunt is also an Arkansas resident, and if Hinson were a viable defendant this Court would have no jurisdiction over this diversity matter.  The case was removed upon the assertion of Freightliner and Detroit Diesel that Hinson was fraudulently joined, and that his citizenship could, therefore, be disregarded for purposes of determining diversity. Counsel for J.B. Hunt conceded that Hinson was not a proper defendant, and the claims against him were dismissed *ore tenus*.

3.   The history of the dispute now before the Court, as testified by witnesses, exemplified by documents, and set forth in the submissions of the parties, is as follows:

*   In June, 2002, there was a traffic accident in Vermont, which involved a J.B. Hunt truck.  Two lawsuits were later filed in New York by persons injured - or on behalf of persons killed - in that accident.  These lawsuits are referred to as the "Johanson Suit" and the "McGrath Suit."  Defendants  included J.B. Hunt,

-2-

Freightliner, and Detroit Diesel.

    *   It is J.B. Hunt's position that the cause of the Vermont accident was a defective fuel line, which leaked fuel on a wet roadway causing the pavement to become slick, and that the responsibility for that defective fuel line lies with Freightliner and Detroit Diesel, the manufacturers of the truck and its engine. J.B. Hunt filed suit in Arkansas against Freightliner and Detroit Diesel (the "Arkansas Litigation") alleging breach of warranty and other claims for damages relating to the fuel lines in its fleet of Freightliner trucks with Detroit Diesel engines.

    *   In June, 2005, J.B. Hunt, Freightliner, and Detroit Diesel reached a settlement of the Arkansas Litigation, the terms of which were reduced to writing and executed by the Parties[1] on July 12, 2005.   This is the document referred to as the Confidential Agreement.

    *   In addition to the payment of a sum of money to J.B. Hunt by Freightliner and Detroit Diesel, the Parties agreed to certain "joint defense" provisions with regard to the Johanson and McGrath Suits.  They agreed to dismiss their cross claims against each other in both Suits with prejudice, and to discontinue taking discovery of each other.   They agreed not to "directly or

---

[1]The word "Parties" is a defined term in the Confidential Agreement.  It refers to J.B. Hunt, Freightliner, and Detroit Diesel in their capacities as signatories.  The Court will use the capitalized word "Parties" to refer to those companies as defined in the Confidential Agreement, and the lowercase word "parties" to refer to those companies in their capacities as parties to this lawsuit.

-3-

indirectly assist the plaintiffs in discovery or at trial in developing or presenting claims" against each other, and, if either case went to trial, they agreed not to question each other's witnesses, or make any argument to the jury that would "malign each other's conduct." They further agreed to accept the jury's apportionment of liability, and not to seek contribution or indemnity from one another. Finally, and most relevant to the case at bar, they agreed not to settle either the Johanson Suit or the McGrath Suit "without the consent and approval of all Parties to this Agreement."

*    Although the Confidential Agreement was to be kept confidential, and neither its contents nor its subject matter were to be communicated to anyone unless required by court order, J.B. Hunt communicated the matter to its insurance company, AIG, and obtained AIG's consent to sign the Confidential Agreement. According to Mark Whitehead, Vice President of Claims and Litigation Management for J.B. Hunt ("Whitehead"), this was done to avoid a reservation of rights or other coverage issues. Freightliner and Detroit Diesel did not, however, communicate the matter to their insurance carrier, Allianz Insurance Company ("Allianz").

*    Shortly after the Confidential Agreement was signed, mediations occurred in both the Johanson and McGrath Suits. The parties and their insurance carriers were represented at these

-4-

mediations. The Johanson Suit was mediated first, and a settlement was achieved with mutual cooperation between J.B. Hunt, Freightliner, and Detroit Diesel.  Mediation of the McGrath Suit was unsuccessful.

     *    Allianz had some knowledge of the Confidential Agreement during these mediations, because Freightliner and Detroit Diesel told the Allianz representative that they had a contract with J.B. Hunt that "could cause problems" with a "separate settlement." Freightliner and Detroit Diesel would not, however, give Allianz a copy of the Confidential Agreement, because of the confidentiality provision.

     *    Another mediation of the McGrath Suit was scheduled in December, 2007.  In preparation for this mediation, Allianz and AIG met in early November, 2007, to discuss strategy.  At the strategy session, Allianz asked AIG to "void the Confidential Agreement and permit Freightliner and Detroit Diesel to negotiate and settle with plaintiffs separately and privately." AIG refused to do so.

     *    Perhaps because of the discussion of the Confidential Agreement at the strategy session, J.B. Hunt became concerned that Freightliner and Detroit Diesel might try to settle with the McGrath plaintiffs without including J.B. Hunt.  Accordingly, on November 13, 2007, J.B. Hunt filed the Declaratory Judgment action against Freightliner, Detroit Diesel, and Hinson.

* On December 5, 2007, J.B. Hunt obtained a document entitled Order Granting Temporary Restraining Order in the Declaratory Judgment Action.  This document purports to restrain J.B. Hunt, Freightliner and Detroit Diesel, as well as "their respective insurance companies" from settling the McGrath Suit without the "consent and approval" of each other.

* Although neither the Complaint in the Declaratory Judgment Action, nor the Order Granting Temporary Restraining Order, were served on Freightliner or Detroit Diesel, those parties did receive notice of same, and filed a Motion To Lift The Temporary Restraining Order, Preliminary And Permanent Injunctive Relief.  Shortly thereafter, they removed the Declaratory Judgment Action from Washington County Circuit Court to this Court.

* J.B. Hunt has expended all of its self-insured retention funds applicable to the New York Litigation, and any further payments on its behalf will be the responsibility of AIG, up to the limits of coverage.  There is no contention that the McGrath Suit against J.B. Hunt cannot be settled within the AIG coverage.

* Allianz has negotiated a settlement of the McGrath claims against Freightliner and Detroit Diesel, in the sum of $4,750,000, contingent upon getting the Order Granting Temporary Restraining Order set aside.  The offer to settle was made with the knowledge of Freightliner and Detroit Diesel, but without their approval, which is not necessary under the Allianz policy

-6-

(the "Policy").  The Policy provides that Allianz has "the right to investigate, defend and settle the claim as we deem expedient." Allianz believes it is expedient to consummate this settlement.

*   The Policy further provides that "[n]otice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy.  This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives."

4.   The language of the Order Granting Temporary Restraining Order is curious, to say the least.  In the first paragraph, it purports to restrain J.B. Hunt, Freightliner, and Detroit Diesel, and "their agents and assigns, including their respective insurance companies" from entering into a settlement agreement with the McGrath plaintiffs without the consent and approval of each other.  In the second paragraph, it states that "[i]f any party believes that they have been aggrieved by entry of this Temporary Restraining Order, the Court will calendar an immediate hearing to make findings of fact and conclusions of law respecting whether the Temporary Restraining Order should be granted or denied, and if granted, whether the posting of a bond shall be required."

These odd provisions suggest that no temporary restraining order was, in fact, actually entered.  Certainly there is no

evidence that if such was entered, it was done upon the basis of findings of fact or conclusions of law.  In this circumstance, the Court believes that the proper posture to take up the matter is one of considering whether a restraining order should be entered in the first instance, rather than whether one properly entered should be set aside.  If the Court finds no restraining order is appropriate, it follows that the Order Granting Temporary Restraining Order should be vacated.

5.   In order to establish a right to preliminary injunctive relief, the moving party must satisfy the four factors set out in **Dataphase Systems, Inc. v. CL Systems, Inc.**, **640 F.2d 109 (8th Cir. 1981):**

* Is there a threat of irreparable harm to the movant?

* What is the balance between harm to the movant if injunctive relief is not granted, and harm to the respondent if it is granted?

* What is the probability that the movant will succeed on the merits?

* What is the public interest?

The Court will examine each of these factors in turn.

6.   **The Irreparable Harm Factor**:  Whitehead testified that the harm J.B. Hunt stands to experience if Freightliner and Detroit Diesel negotiate a separate settlement of the McGrath Suit consists of loss of goodwill between J.B. Hunt and the McGrath

-8-

plaintiffs; loss of goodwill between J.B. Hunt and the jury trying the McGrath Suit; and the difficulty of obtaining a "fair apportionment" of damages in the McGrath Suit if Freightliner and Detroit Diesel are no longer parties.

(a)   In legal terminology, "goodwill" refers to "[a] business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp. for purchase; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets." **Black's Law Dictionary, Eighth Edition**.

J.B. Hunt would liken this concept to something more akin to "likeability quotient" relating to the plaintiffs or the jury in the McGrath Suit.  The Court is not persuaded by that contention, and believes that, by definition, the "goodwill" theory is inapposite here.

(b)   As to the claim that J.B. Hunt might not get a "fair apportionment" of damages at trial of the McGrath Suit, the Court notes that Whitehead conceded:

*  that the percent of fault apportioned to J.B. Hunt would translate to the amount of money it would have to pay on an adverse jury verdict; and

*  that J.B. Hunt had exhausted its self-insured retention funds, as a consequence of which any verdict against it would be paid with AIG's money.

Monetary loss rarely constitutes "irreparable harm" when evaluating the merit of a petition for injunctive relief. **Corning Savings and Loan Association v. Federal Home Loan Bank Board**, 562 **F.Supp. 279 (E.D. Ark. 1983)** (monetary loss constitutes irreparable harm only where an act threatens destruction of ongoing business).

In the Court's view, such a loss does not constitute irreparable harm in the circumstances here shown, especially since it would appear that any monetary harm to be sustained would be borne by J.B. Hunt's Insurer, AIG, and not by J.B. Hunt.

7. **The Balance of Harms Factor**:  Allianz contends that it will have more exposure if the McGrath Suit goes to trial than if it settles the claims.  It points out that it has negotiated a settlement which it deems expedient, but does not reveal what its exposure might be if it cannot conclude the settlement and the case goes to trial.

This risk to Allianz must be evaluated against the risk to J.B. Hunt if it faces the "empty chair" defense in a trial of the McGrath Suit due to the absence of Freightliner and Detroit Diesel.  That risk is unpredictable, of course, as there is the possibility of a lower verdict as well as the possibility of a higher verdict.  It is by no means a foregone conclusion that a jury would place more blame on J.B. Hunt than on absent defendants, and Whitehead admitted as much in his testimony.

Given the uncertainties on both sides of the equation, the

Court perceives this factor to be about equally balanced, with no clear advantage or disadvantage to either party.

8.   **The Probability of Success Factor**:   The Court must begin this portion of its analysis by pointing out that J.B. Hunt has no underlying claim against Allianz upon which to succeed or fail. Its Complaint seeks only to have declared the rights of the Parties (to the Confidential Agreement) or the parties (to the Declaratory Judgment Action).   Although J.B. Hunt argues that, under its interpretation of the Confidential Agreement, Allianz is bound thereby because it was the "agent" of Freightliner and/or Detriot Diesel, the Court rejects that interpretation as hereafter noted.   Accordingly, the Court finds that Allianz was not a Party to the Confidential Agreement, and it only became a party to this action by its own intervention.

In light of the foregoing, the Court sees no chance that J.B. Hunt will succeed on its claim against Allianz, because it has none.

The Court notes, in passing, that even if J.B. Hunt were to assert a claim against Allianz based on some iteration of the theories advanced in its brief and at the hearing on this matter, it is not likely that such a claim would succeed.   The arguments advanced by J.B. Hunt under which it claims Allianz should be bound by the Confidential Agreement (agency, waiver, estoppel, ratification) all depend - for their application in the

-11-

circumstances of this case - upon proof of facts and circumstances which appear to be totally absent. The contention that Allianz made either Freightliner or Detroit Diesel its agent with authority to sign the Confidential Agreement on its behalf and to bind it thereby appears to be based upon nothing more than speculation. The same may be said of the other contentions.

On the other hand, the Court notes that the relationship between Allianz and its insureds is governed by a written contract which specifically provides that

> "[n]otice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives."

That contract also gives Allianz the right to settle claims "as we deem expedient."

These provisions are not ambiguous, and it is the duty of this Court to give effect to them in their "plain, ordinary, and popular sense." **Smith v. Southern Farm Bureau Casualty Ins. Co.**, **353 Ark. 188, 192, 114 S.W.3d 205, 206-7 (2003)**. No written endorsement binding Allianz to the Confidential Agreement has been shown, and in the absence of such a showing, Allianz is free to settle claims in the McGrath Suit as it "deems expedient."

9. **The Public Interest Factor**: Although neither party has addressed the public interest factor, the Court finds it instructive to do so in the interests of complete analysis.

-12-

Under Arkansas law, the freedom to contract is recognized as an "important freedom," **Evans Laboratories, Inc. v. Melder**, **262 Ark. 868, 562 S.W.2d 62 (1978),** and the Court finds that Arkansas public policy supports the enforcement of valid contracts. However, in this case there are two contracts, and enforcing one (the Confidential Agreement as interpreted by J.B. Hunt) would require violation of the other (the unambiguous language of the Allianz Policy). Under these circumstances, especially when considering that Allianz is not a Party to the Confidential Agreement, and enforcement of the Allianz Policy would not necessarily violate the Confidential Agreement, the Court finds that the public interest in enforcement of contracts favors Allianz.

There is another public policy at issue as well. Arkansas public policy strongly favors the settlement of disputes. **Stromwell v. Van Hoose**, **371 Ark. 267, --- S.W.3d ---, 2007 WL 2955974 (2007).** The evidence here is that damages claimed by the McGrath plaintiffs relate to severe injuries and death. Indeed, Allianz has found it "expedient" to offer the McGrath plaintiffs $4.75 million in settlement. A ruling preferring the enforcement of the Confidential Agreement over the enforcement of the Allianz Policy would not contribute to an expeditious settlement of the McGrath claims, while a contrary ruling would. This aspect of public policy also weighs in favor of Allianz.

-13-

10.  In light of the foregoing analysis, the Court concludes:

* that because J.B. Hunt has failed to show it will suffer irreparable harm unless Allianz, Freightliner, and Detroit Diesel are restrained from settling the McGrath Suit, the first **Dataphase** factor does not favor J. B. Hunt;

* that the interests of the parties are about equally balanced on the second **Dataphase** factor;

* that the third **Dataphase** factor strongly favors Allianz; and

* that the fourth **Dataphase** factor also favors Allianz.

While the **Dataphase** analysis is far from exact, the Court believes the conclusion to which it points in this case is sound. Thus, the Court concludes that there is no basis for the issuance of a temporary restraining order as against Allianz in this matter, and the Order Granting Temporary Restraining Order should be vacated.

11.  The analysis is different with respect to the request by Freightliner and Detroit Diesel that the Order Granting Temporary Restraining Order be lifted as to them, because they are parties to the Confidential Agreement and do not question its binding effect on them.  Nevertheless, the Court believes the result is properly the same because - as was the case in the Allianz analysis - J.B. Hunt has not shown a threat of irreparable harm. Its money is not at stake in the McGrath Suit.  In addition, while

-14-

Freightliner and Detroit Diesel contend that they have not violated - and do not intend to violate - the Confidential Agreement, they also point out that, if they should do so, J.B. Hunt may have its remedy in money damages.

Accordingly, the Court finds that the Motion To Lift The Temporary Restraining Order, Preliminary And Permanent Injunctive Relief of Freightliner and Detroit Diesel should also be granted.

**IT IS THEREFORE ORDERED** that the **Motion And Brief In Support Of Allianz Insurance Company's Motion To Vacate Order Granting Temporary Restraining Order** (document #7) and the **Motion To Lift The Temporary Restraining Order, Preliminary And Permanent Injunctive Relief** filed by defendants in the Circuit Court of Washington County, Arkansas, are **granted**, and the Order Granting Temporary Restraining Order entered by the Circuit Court of Washington County, Arkansas, in this matter is hereby **vacated.**

**IT IS SO ORDERED**, this 4th day of March, 2008.

 /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**

-15-